IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| PATRICK PRINCE, ) | |
| ) | |
| Plaintiff, ) | Case No. 18 CV 2952 |
| v. ) | |
| ) | |
| KRISTON KATO, RICHARD RYBICKI, ) | |
| PAUL SARPALIUS, Chicago Police Sergeant ) | |
| W. ROONEY (Star No. 934), UNKNOWN ) | |
| EMPLOYEES OF THE CITY OF CHICAGO, ) | District Court Judge Martha M. Pacold |
| and the CITY OF CHICAGO, Illinois, ) | Magistrate Judge Sunil R. Harjani |
| ) | |
| Defendants. ) | |
| ) | |

**JOINT STATUS REPORT**

Pursuant to this Court's August 26, 2019 Order (the "Order") (Dkt No. 131), the parties submit the following Joint Status Report:

**I.** **Completed depositions since the last joint status report of June 3, 2019.**

| DATE | DEPONENT |
|---|---|
| June 4 | Dennis Keane |
| June 10 | Barbara Ann Starling |
| June 20 | Anthony Steward Bey |
| July 12 | Juanita Watson |
| July 17 | Bill Healy |
| July 21 | Keith Gunn |
| July 26 | Richard Rybicki |
| August 6 | Theodore O'Connor |
| August 15 | Dushun Wilkins |
| August 27 | Patricia Warner |
| September 6 | Ozias Israel |
| September 16 | James Sajdak |
| September 17 | Bruce Prince |
| September 17 | LaRhonda Prince |
| September 18 | Lacerise Prince |
| September 26 | Georgia Cox |

1

| DATE | DEPONENT |
|---|---|
| September 26 | Mary Prince |
| September 26 | Liakapolous |

**II.    Firm depositions for October 2019.**

| DATE | DEPONENT |
|---|---|
| October 1 | TBD |
| October 2 | Cornelius Green |
| October 3 | TBD |
| October 7 | TBD |
| October 8 | David March |
| October 9 | Eugene Roy |
| October 10 | TBD |
| October 15 | Michael Waslewski |
| October 16 | Frederick Seaton |

Defendants are available to proceed with depositions on October 1, 3, 7-11, 15-18, 21-25, 29-30.  Individual Defendant Officers are currently also available on November 5-7, 12-14, 19-21, 25 and 26.  Plaintiff's counsel has informed defense counsel that they are available on October 1, 3, 7, 8, 9 and 10 and that they will provide additional October dates, as well as November dates during a scheduled meet and confer conference on September 27, 2019.  During the scheduled meet and confer conference, the parties intend to finalize the October and November deposition schedules.  The parties respectfully request that the Court permit them to submit an updated Joint Status Report on October 1, 2019 that sets forth the updated information.

**III.    *Monell* Issues**

**Plaintiff's Statement**: The parties have not been able to reach an agreement on *Monell* discovery.  At the last status hearing, the Court indicated its familiarity with the parties' ongoing dispute regarding the scope of *Monell* discovery, as well as familiarity with the parties' respective positions with respect to that dispute.  As such, Plaintiff only provides a brief

summary of the dispute and Plaintiff's position here. At the Court's request, Plaintiff can provide a more thorough brief.

From Plaintiff's perspective, one of the most important initial questions is reaching an agreement about the universe of documents to be discovered. Plaintiff has proposed stipulations and sought to confer on this issue. The City refuses to agree to Plaintiff's proposed stipulation with respect to the proposed subset of documents and, likewise, refuses to propose any stipulation of its own. With respect to homicide files, the City has taken the position that Plaintiff should forego this discovery. The City premises its position on the unsupported claim that it cannot comply with this Court's Order that the parties complete all fact discovery on or before January 20, 2020. Plaintiff does not intend to forego discovery regarding homicide files. Moreover, Plaintiff believes that discovery related to the homicide files can be completed by January 30, 2020. With respect to CR files, the City continues to propose the production of a subset of documents—the universe of which is unclear because the City refuses to discuss or even propose a period of time for discovery—without providing a rational basis for the proposal.

**City's Statement:** The City agrees with plaintiff that the parties have been unable to reach agreement on *Monell* discovery document production (Dkt. 131), but disagrees with the reasons advanced by plaintiff. The City addresses the two categories of documents immediately below:

CR Files: Plaintiff's Request for Production Nos. 44 and 47 requested large quantities of CR files for a 20 year period. On November 30, 2018, the City timely served a response to plaintiff's requests objecting to paragraphs 44 and 47. On July 7, 2019, over seven months after the City's response, plaintiff sent correspondence proposing the following alternatives to paragraphs 44 and 47:

  (a) The City produces all CRs City-wide for the five years prior to the Porter investigation.

  (b) The City identifies all CRs City-wide for the five years prior to the Porter investigation, and the City produces a random sample from that set of files by selecting every 5th/10th/15th/etc. file. This proposal would be dependent on the City agreeing to allow Plaintiff to participate in the sampling, and the City agreeing that the resulting production is a representative sample for purposes of the City's policies and practices, along the lines of the stipulation already sent to the City in this case.

  (c) The City produces all Area 4 CRs for the seven years prior to the Porter investigation.

  (d) The City identifies all Area 4 CRs for the five years prior to the Porter investigation, and the City produces a random sample from that set of files by selecting every 5th/10th/15th/etc. file. This proposal would be dependent on the City agreeing to allow Plaintiff to participate in the sampling, and the City agreeing that the resulting production is a representative sample for purposes of the City's policies and practices.

  (e) The City produces all CRs related to alleged misconduct concerning interviews or interrogations of suspects and witnesses for the 10 years prior to the Porter investigation.

Plaintiff added that he would consider other counter-proposals "with the caveat that the City must agree that the narrowed universe it prefers is a representative sample for purposes of the City's policies and practices."

In an effort at compromise, the City agreed to attempt to create a list of detectives who passed through Area 4 sometime between August 28, 1986 and August 28, 1991, and the City has now created and supplied that list to plaintiff. On August 13, 2019, the City also agreed to produce the CR files from August 28, 1986 and August 28, 1991 for every 5th randomly selected detective from that list. With its proposal, the City explained that, if accepted, this project would take a substantial amount of time and effort by both the police department and the City's lawyers, as it would include the following work in addition to the creation of the Area 4 list of detectives: the random selection of every 5th detective from that list; the identification of CRs for each randomly selected detective; the search in the CPD warehouse for each of the identified

4

CRs; the copying of the located CRs and production to the City's lawyer's office; and the redaction of the CRs for production to plaintiff. Of course, this process merely summarizes the substantial amount of ministerial work attached to this project. The substantive review of each CR by the parties' attorneys would take hundreds more attorney hours, potentially require the gathering of files from other agencies, and likely lead to an unknown amount of fact depositions and expert depositions. The City asked plaintiff to reconsider his "caveat" that the City must agree the CRs ultimately produced constitute a "representative sample for purposes of the City's policies and practices." Indeed, plaintiff's "caveat" is an improper burden shifting request that ignores plaintiff's obligation under Rule 26(b)(1) to propound discovery that is proportional to the needs of the case and relevant to the claims and defenses. Plaintiff cannot avoid this requirement by demanding disproportional discovery, and then suggest the defendant must agree to some stipulation or else waive the proportionality requirement of Rule 26(b)(1). It is unfair to ask the City to stipulate considering the City does not know what plaintiff intends to prove or how plaintiff will use the evidence the City would be producing. Moreover, in other litigation, plaintiff's attorneys informed the City's attorneys that they had consulted with a statistical expert who would apparently accept similar types of proposals to those outlined above. The request for a stipulation therefore appeared moot and/or unnecessary.

  On August 16, 2019, plaintiff rejected the City's August 13, 2019 offer, and "proposed the City produce all of the CR files for each detective who worked at Area Four between 1986 and 1991." In response, the City continued to negotiate. Specifically, the City agreed to produce the CR files from August 28, 1986 and August 28, 1991 for every 4th randomly selected detective from the Area 4 list. Plaintiff rejected the City's proposal and, unfortunately, did not make a counter-proposal because, according to plaintiff, the City would not agree that the

5

production would be a representative sample to whatever *Monell* theory plaintiff ultimately attempts to prove with these files. Notwithstanding plaintiff's decision to decline to further negotiate, and its reluctance to "not bid against itself," the City remained willing to negotiate. As a further sign of the City's willingness to reach an agreement, the City agreed to produce CRs made between August 28, 1986 and August 28, 1991 from the Area 4 detective list for every 3rd randomly selected detective. Plaintiff rejected the City's proposal yesterday, September 23, 2019, and declined to make a counter-proposal, insisting he needed the City to waive potential trial defenses by stipulating that the ultimate CR production would be a "representative sample" of something.

Homicide Files: By way of background, plaintiff first requested 18 years of CPD homicide files in RFP Nos. 45 and 46. The City responded in November 2018 objecting to plaintiff's requests, and did not hear from plaintiff for many months on the issue. Plaintiff next re-raised the issue of homicide files in May and June 2019, at which time the parties agreed to focus on discovery concerning investigative files relative to the underlying Edward Porter homicide. The parties agreed it would not make sense from plaintiff's perspective or the City's perspective to pursue wide-ranging discovery of a so-called "street files" *Brady* based *Monell* claim when there was no evidence the City withheld any specific documents relative to the underlying case. To that end, plaintiff asked for, and the City agreed to provide, a witness from the CPD to testify about the efforts made to confirm there is not any additional investigatory file that could be located beyond the file materials for the Edward Porter homicide already produced. (The City offered that witness for deposition to proceed on June 19, 2019, but plaintiff chose not to proceed at that time).

Consistent with the parties' agreement, the parties advised this Court of their plan to focus on the files in the underlying case in the joint status reports dated May 16, 2019 and June 3, 2019. (Dkt. 101 and 105). As for the May 16, 2019 joint status report, plaintiff stated "as to [the *Brady* and "street files" claim], the parties have discussed focusing on certain discovery concerning the files in the underlying homicide investigation and have agreed to confer once again when that discovery is completed." (Dkt. 101 at 5). On behalf of the City, we stated that "as to the alleged *Brady* based *Monell* claim, the City adds that the parties discussed that the need for discovery on any *Brady* based *Monell* claim may be obviated by the discovery to be conducted regarding the files in the underlying homicide investigation." (Dkt. 101 at 5). Then, on June 3, 2019, plaintiff stated in the Joint Status Report presented to this Court that "the parties have set out a plan for the first phase of discovery concerning the underlying CPD files that will dictate the next phase of discovery on this issue. Plaintiff is awaiting the City to designate and produce witnesses that can testify about the files in the underlying Edward Porter investigation." (Dkt. 105 at 2-3). On behalf of the City, we stated that "with respect to the alleged *Brady* based *Monell* claim, it is the City's position that any *Monell* related discovery will be unnecessary once it produces a witness for deposition verifying that there are not any additional investigatory materials relating to the underlying murder in the possession of the Chicago Police Department." (Dkt. 105 at 3).

Notwithstanding these representations to this Court, plaintiff has now reversed course and is seeking to pursue burdensome and time-consuming discovery with respect to his *Brady* based *Monell* claim despite failing to identify any specific documents that were withheld from him in the underlying case. The City asked plaintiff to reconsider pursuing this discovery, which will be expensive, burdensome, and time-consuming. Based on experience from other cases, it

7

does not appear possible to conduct discovery on this claim within the time frame set by the Court. For instance, in *Fields*, the production of homicide files was a time-consuming process that occurred separate from the litigation after the 2014 *Monell* verdict in favor of the City. After the district court awarded plaintiff a new trial in April 2015, and the substantial file gathering work had already been completed, the court in *Fields* ordered the City to produce in excess of 450 investigative files, which was accomplished in about June 2015. Plaintiff was then given seven months to attempt to obtain criminal defense files to compare with the CPD investigative files to evaluate whether any *Brady* material contained in the investigative files was not contained in the criminal defense attorneys files. After seven months, plaintiff failed to identify a single other file where any *Brady* material was withheld. Plaintiff then changed course and advanced the unprecedented and novel "underproduction" theory. Thereafter, the City was allowed approximately five months to attempt to gather from the Cook County State's Attorney's Office corresponding files relative to the criminal defense attorney files plaintiff had produced. That, of course, was also a time-consuming and expensive process not only for the City, but for the non-party CCSAO as well. After the CCSAO made its production, the City identified certain witnesses who might be relevant to the files the CCSAO was able to locate. Plaintiff's attorneys then deposed around 20 of those individuals between spring 2016 up to and including October 2016, another five month period. There was also extensive and expensive expert discovery on this claim that proceeded as well. Thus, in total, the *Brady* based *Monell* discovery in *Fields* took about 17 months between the overturning of the *Monell* verdict for the City in April 2015 and the *Monell* verdict for the plaintiff in December 2016, and this does not even account for the *Monell* discovery that transpired in the four years the case was pending before the verdict for the City in 2014.

8

In this case, there is no justification similar to *Fields* to pursue such burdensome and time-consuming discovery. The underlying facts of *Fields* are distinguishable from the facts in this case, because in *Fields* the City had located and produced a file that it acknowledged was not produced during the criminal process. There is no such file in this case.

In sum, the City has made a fair offer for the production of CR files in this case, and continues to hope to reach agreement with plaintiff on that subject, but the "ball is in plaintiff's court." As to the production of unrelated homicide files, consistent with the parties prior positions submitted to this Court (Dkt. 101 and 105), the pursuit of such burdensome discovery would be a meaningless exercise under the facts of this case and, in the City's opinion, cannot be accomplished in the current discovery period based on experience from other cases.

Dated: September 24, 2019

Respectfully submitted,

/s/ Misha Itchhaporia

Steven B. Borkan
Timothy P. Scahill
Krista E. Stalf
Misha Itchhaporia
Borkan & Scahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, IL 60603
312-580-1030


s/ Daniel Noland
Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Reiter Burns LLP
311 S. Wacker Dr., Suite 5200
Chicago, IL 60606
312-982-0090

/s/ Scott R. Drury
Steven Art
David B. Owens
Scott R. Drury
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Phone: 312.243.5900
F: 312.243.5902

9