UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK PRINCE<br><br>                    Plaintiff,<br><br>    v.<br><br>KRISTON KATO, et al.,<br><br>                    Defendants. | Case No. 18 C 2952<br><br>Magistrate Judge Sunil R. Harjani |

### MEMORANDUM OPINION AND ORDER

      Plaintiff Patrick Prince filed this wrongful conviction action against former Chicago police detective Kriston Kato and other officers alleging that he was wrongly convicted of the 1991 murder of Edward Porter as a result of investigative misconduct by Kato and his colleagues. Prince also asserts *Monell* claims against the City of Chicago, which he alleges: (1) permitted physically and psychologically abusive interrogations, resulting in false confessions and other false witness statements; (2) resulted in the fabrication of evidence; (3) caused the routine suppression of evidence; (4) allowed for the manipulation of identification procedures; and (5) left Chicago police officers without adequate training, supervision, and discipline. The present dispute is over the scope of *Monell* discovery. Specifically, Plaintiff seeks to compel two sets of files from the City: (1) homicide investigation files from Area Four for the years 1986 to 1991; and (2) Complaint Register (CR) files from Area Four for the years 1986 to 1991. Doc. [158]. The City has objected to this production, Doc. [168], Plaintiff has replied, Doc. [169], and the City has filed a sur-reply, Doc. [181]. For the reasons stated below, Plaintiff's motion is granted in part and denied in part.

**DISCUSSION**

Federal Rule of Civil Procedure 26 governs the scope of civil discovery and allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). However, a court "must limit the frequency or extent of discovery otherwise allowed by [the] rules" if "the discovery sought is unreasonably cumulative or duplicative" or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Rule 1 likewise directs that the civil rules should be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Finally, magistrate judges "enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013). With these principles in mind, the Court considers and resolves the *Monell* discovery issues presented by the parties.

**A.     Homicide Investigation Files**

Plaintiff seeks to hold the City liable on the basis that a number of its official policies and customs were the moving force behind his wrongful conviction. A municipality is liable under 42 U.S.C. § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Monell v Dept. of Social Serv. Of City of New York*, 436 U.S. at 694. A municipal policy can be shown in one of three ways: "(1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well settled as to constitute a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an allegation that a person with final policy-making authority caused the

2

constitutional injury." *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 844 (7th Cir. 2004) (citation omitted).

As an initial matter, there are two key considerations in resolving this issue. First, Plaintiff bears a heavy burden in proving *Monell* claims, and many plaintiffs have failed where they have not provided sufficient evidence to prove a widespread custom. *See Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003); *Pittman ex re. Hamilton v. County of Madison*, 746 F.3d 766, 780 (7th Cir. 2014). Indeed, in two recent wrongful conviction cases in this district, the *Monell* discovery ordered was significant, and ultimately successful for those plaintiffs. *Rivera v. Guevara, et al.*, No. 12 C 4428 (N.D. Ill.); *Fields v. City of Chicago, et al.*, No. 10 C 1168 (N.D. Ill.). For its part, the City has acknowledged that *Monell* discovery is broad and expensive when it previously argued for bifurcation of *Monell* claims from the individual claims. Doc. [53] at 4. As a result, the Court is mindful that *Monell* discovery is inherently time-consuming and voluminous, and the Court should also not excessively limit discovery such that it affects Plaintiff's ability to prove his claim at trial. Not all Plaintiffs choose to venture down the path of *Monell* discovery, either by not alleging *Monell* claims or by not investing the time and funds into the kind of discovery needed to prove the claims. But Plaintiff has made that choice here, and thus the Court will endeavor to allow discovery on that claim within the confines of Rule 26(b)(1).

Second, the district judge has denied the City's motion to bifurcate the individual claims from the *Monell* claims. Doc. [65]. Thus, all discovery is proceeding simultaneously, and Plaintiff is in the midst of discovery on both the individual and the *Monell* claims. Accordingly, the Court should not make conclusions about whether Plaintiff has made a sufficient showing on his individual claims to warrant *Monell* discovery. Nor should the Court make findings about whether certain facts have been established or not established to justify *Monell*-related discovery. Of

course, the Court can examine Plaintiff's individual claims and determine whether there is a nexus to the *Monell* theories, and it can also determine whether the requested discovery is likely to help prove the *Monell* claims. However, as this Court previously stated, "The Court cannot require a threshold showing when discovery is not complete on the individual claims – such a process would essentially be a *de facto* bifurcation and would also not be appropriate because the Court cannot be sure that all discovery has been uncovered yet as to the individual claims." *Reyes*, 2019 WL 4278043 at *4.

Turning to the question at hand, the Court must consider both relevancy and proportionality concerns under Federal Rule of Civil Procedure 26(b)(1) in deciding the scope of *Monell* discovery. Plaintiff has argued that the homicide files relate to a number of his *Monell* theories, including coerced confessions, fabrication of evidence, suppression of evidence, eyewitness identification procedures, and training and supervision of police officers. The City, in turn, contends that homicide files relate only to Plaintiff's "street file" claim, which means that if Plaintiff cannot demonstrate that a parallel investigative file (a/k/a "street file"), such as the one identified in *Rivera*, was not disclosed to Plaintiff, he is not entitled to the homicide files. As to Plaintiff's other *Monell* theories, the City attacks each one and argues that homicide files will not reveal evidence of any of those theories.

The Court finds that the homicide files are relevant to Plaintiff's *Monell* theories. *See DeLeon-Reyes v. Guevara*, No. 18 C 1028 and *Solache v. City of Chicago*, 18 C 2312, 2019 WL 4278043 (N.D. Il. Sept. 10, 2019).[1] It is important to recognize that Plaintiff is attempting to prove a widespread policy or custom of significant misconduct by police officers in homicide investigations at Area Four prior to the 1991 Porter murder. In general, homicide files are

---

[1] These two cases were consolidated for purposes of discovery.

4

important pieces of evidence of what actually transpired during Area Four homicide investigations up to that point. Those files will show the techniques used by Area Four detectives, for example, officers' practices when they took confessions of individuals. It is certainly the case, as the City argues, that Plaintiff's counsel do not have the "supernatural" ability to look at a file and determine if a statement is forged or if a suspect was beaten into a confession. But there may be discrepancies or inconsistencies within the files that help prove a particular fact, interviews of third-party witnesses may reveal contradictory information, and police reports may reveal the nature of interrogations and confessions. A *Monell* claim can be proven either by direct or circumstantial evidence. Simply put, a jury could determine *Monell* liability through a "death-by-a-thousand-cuts" presentation by Plaintiff. A showing of repeated patterns of irregularities and inconsistencies found in homicide files, combined with other evidence, can be part of a circumstantial case to prove a *Monell* claim. Furthermore, it is unlikely that any police department Rule 30(b)(6) witness will testify to coerced confessions or fabricated evidence, or that any written policy or training manual will describe those alleged practices. Thus, the actual investigative practices that took place during the relevant timeframe in Area Four by officers takes on added importance in proving or disproving a widespread custom or practice.

On a more granular level, the parties dispute whether the homicide files will actually provide evidence of the specific *Monell* theories alleged in the Complaint. Plaintiff has argued that the homicide files will reveal evidence of practices concerning: (1) coerced confessions; (2) fabrication of evidence; (3) suppression of evidence and failure to preserve or document investigative information; (4) improper eyewitness identification procedures;[2] and (5) failure to

---

[2] The City contends that eyewitness identification procedures are not explicitly discussed in the Complaint, however, Plaintiff has made numerous allegations regarding failure to record and preserve evidence, and here alleges that non-identifications of Plaintiff were not recorded and preserved. Doc. [1] ¶ 151. For discovery purposes, the Court finds that this theory is within the bounds of Plaintiff's Complaint.

train and supervise police officers. Each of these theories have been alleged in Plaintiff's Complaint. Doc. [1] ¶¶ 60-80, 144-55. The City has argued that Plaintiff has not established similar misconduct on his individual claim to justify *Monell* discovery on these theories, and the homicide files will not reveal evidence of these matters in any event.

The Court finds that the homicide files can be part of the mosaic of evidence that may establish widespread customs or practices in this case, and is sufficiently connected to Plaintiff's individual claims. First, Plaintiff has alleged he was subject to coercive interrogation tactics, including sleep and food deprivation, and physical violence, resulting in a false confession. Homicide investigation files may show the time between arrest and when an arrestee allegedly gave a statement, the length of an interrogation, the number of participants in the interrogation, where the interrogation took place, any food or water provided or not provided to an arrestee, and the physical condition of the arrestee. Second, Plaintiff has alleged that police reports were fabricated by detailing his false confession and recounting facts of the crime that were supposedly provided by Plaintiff. Homicide files may contain investigative reports about an arrestee's alleged confession and may demonstrate some pattern of law enforcement misconduct, such as details in a confession that would only be known to law enforcement officers, suggesting that the facts originated from the officers. Third, Plaintiff has alleged that the conduct he experienced was caused by the City's failure to train and supervise its police officers. Homicide files may reveal evidence that police officers did not routinely follow department policies and procedures in homicide investigations, which contributed to the conduct alleged. These potential avenues of relevancy are sufficient to warrant production of the homicide files.

The parties vehemently dispute whether this case involves any suppression of evidence, which is another basis of Plaintiff's *Monell* claim. Whether it does or not is really of no instance

6

at this time because the above theories of *Monell* liability suffice to demonstrate that the homicide files are relevant discovery. The Court acknowledges that, at the present time, Plaintiff has not uncovered any evidence of a street file such as the one found in *Rivera*. The Court also recognizes that the parties contest whether any evidence was actually undisclosed in this case, or whether the information was simply not the type of material that would be enclosed in a homicide investigation file. *Compare* Doc. [169] at 12-13 (discussing suppression of a witness's non-identification) with Doc. [181] at 3 (noting that the non-identification would not be in a homicide file and was produced in a supplementary report to the prosecutor); *compare* Doc. [169] at 10 (noting that a stop order has "vanished") with Doc. [181] at 3-4 (stating that a supplementary report disclosed this information in his criminal case). These disputes need not be resolved by the Court at this time. While past wrongful conviction cases that have proceeded to trial in this district have focused on *Monell* liability based on undisclosed, *Brady*-related street files, that is not the only method of proving *Monell* liability and certainly is not the only allegation made by Plaintiff here.

      The City argues that Plaintiff's non-street file theories are novel and untested—but that does not also mean they are meritless. Simply because Plaintiff has chosen to approach the *Monell* claim in a different manner than the *Brady*-based "street file" theory should not preclude his ability to prove *Monell* liability using a different approach. Moreover, denying the production of homicide investigative files, which are evidence of actual police practices in homicide investigations, would be a significant blow to Plaintiff's ability to prove a widespread practice of misconduct in homicide investigations. True, as the City suggests, these productions may be for nothing—the *Monell* claim could be knocked out at summary judgment, the individual claims may be unsuccessful and thus *Monell* claims could fail, or the jury could simply find that the *Monell* claims were unproven. But all of these possibilities exist in other cases too, not just wrongful

7

conviction cases. Even though the 2015 Amendments to the Federal Rules of Civil Procedure were designed to reduce the amount of unnecessary and excessive discovery that often take place, they were not designed to foreclose parties from proving their claims. Discovery is still just that— the opportunity to *discover* whether evidence will support or disprove a claim. Parties still request and receive a broad variety of documents in discovery and explore different areas of questioning at depositions—only a sliver of that overall discovery actually makes an appearance at trial as admitted evidence.

There are two significant concerns that underlie the City's objections, and the Court finds both of those concerns are valid. First, the City is concerned that the production of homicide files will open discovery on many or all of these homicides, which will involve documents being produced from the Cook County State's Attorney's Office, from former defense lawyers for those convicted defendants and other relevant parties, combined with depositions on these homicides to re-create events that occurred over 20 years ago, along with rebuttal discovery from the City to disprove Plaintiff's allegations of misconduct in those cases. While this exact issue is not presently before the Court, the Court will be reluctant to permit wide-ranging discovery into hundreds of old homicide cases. That approach would add years to the litigation and result in thousands, if not millions, of dollars of expenditures by both parties to essentially recreate events that happened decades ago. It is challenging enough to conduct discovery in this one wrongful conviction case, for a murder that happened in 1991, nearly thirty years ago, and it has already resulted in almost two years of discovery and significant expenses. To open up discovery on other homicides would not be consistent with ensuring a just, speedy, and inexpensive process. There are avenues to use these homicide files for *Monell* claims without this extensive discovery, including the use of expert witnesses to review the files and opine on practices in homicide investigations. The Court in

8

*Sierra v. Guevara, et al.*, 18 C 3029 (N.D. Ill.), Doc. [154], recently recognized this burden and ordered that the plaintiff was barred from re-investigating those homicides.

Second, the City has raised genuine concerns about the burdens and expenses with retrieving, reviewing, and producing hundreds of homicide files from Area Four. These burdens involve the need for Chicago Police Department personnel to retrieve old files, the expense of scanning and processing old hard-copy documents of varying sizes and quality, and the cost of reviewing those files and redacting sensitive materials. Those concerns are valid. *See* Defendant City of Chicago's Affidavit Regarding Document Production, *Reyes*, No. 18 C 1028, Doc. [220] (discussing the process needed to retrieve and produce the files). Plaintiff has requested a full five years of homicide files in his motion (1986-1991). Plaintiff is correct that production of several hundred homicide files, on their own, is a relatively small production compared to other, more voluminous productions that often occur in this district. Here, it appears that the limited availability of CPD personnel to attend to this task, combined with the low quality of old hard-copy paperwork, makes this production more burdensome. The City has addressed the burdens associated with a slightly shorter time frame—from August 28, 1986 to August 28, 1991—and estimated there are approximately 548 cleared homicide investigation files. However, production of approximately 400 homicide files is generally consistent with productions ordered in other, similar cases. *See Reyes*, 2019 WL 4278043 (noting that over 400 files were reviewed/produced in both *Fields* and *Rivera*, and ordering the production of a four-year period consisting of 343 files in *Reyes/Solache*, combined with 138 files already produced in another case); *Sierra v. Guevara, et al.*, 18 C 3029, Doc. [154] (ordering the production of five years of homicide files, which amounted to over 400 files based on estimations made in that case). The burdens associated with producing these files ultimately do not justify entirely denying the production of homicide files,

9

but rather necessitate limiting the production to a four-year period, which should result in the production of over 400 homicide files.

Under Rule 26(b)(1), the proportionality concerns weigh in favor of producing four years of Area Four homicide files. First, the importance of the issues at stake in the action are significant. This is a case alleging a wrongful conviction based on claims of physical violence imposed on Plaintiff during his interrogation, and resulting in his incarceration and loss of liberty for over 20 years. Plaintiff's conviction was vacated, he has been released, and the charges have been dropped. The issues at stake are not only Plaintiff's wrongful incarceration, if proven, but the integrity of our state's policing and criminal justice system. Second, the amount in controversy is also substantial—past jury verdicts and reported settlements have been in the millions of dollars, and at times, over $10 million for cases of wrongful convictions and incarcerations of over 20 years. Third, Plaintiff, as a former incarcerated individual, has little to no access to CPD documents about widespread custom and practices, and those documents are solely in the hands of the City, which weighs in favor of more liberally providing materials to Plaintiff. Fourth, the importance of the discovery in resolving the *Monell* claims is high. The Court has discussed the numerous ways the homicide files could potentially be used to help prove *Monell* claims. Plaintiff must also have access to enough other homicide investigations to prove that a *widespread* practice or custom caused the constitution violation in his case. Finally, the benefits in ordering the discovery outweigh its burden. The burden, as described by the City, is not insignificant. Nevertheless, proportionality concerns need not be an all or nothing proposition. Production of four years of homicide files is sufficient for the Plaintiff to examine and use in his attempt to establish a widespread pattern or practice. The City's other concerns about costs stem from the alleged discovery that will flow from allowing the production of these files, but the Court has expressed

10

above its intention to reign in any widespread and excessive re-investigations of underlying homicides. Accordingly, in weighing the proportionality factors, the Court finds that a four-year period, from August 28, 1987 to August 28, 1991, is proportional to the needs of the case under Rule 26(b)(1).

**B.     Complaint Register Files**

The battle over Complaint Register (CR) files, which contain information about complaints and disciplinary actions against officers, is much simpler. Plaintiff has asked for CR files from 1986 through 1991, and has asserted that they are relevant to his *Monell* claim on the alleged failure to train and supervise police officers. The City primarily contests the timeframe for production under proportionality concerns, but agrees to produce CR files for a four-year period if the Court follows its prior ruling in *Reyes* and *Solache*, 2019 WL 4278043. The City has estimated that this will result in the production of approximately 210 CR files. As the Court noted in *Reyes and Solache*, the production of four years of CR files is consistent with the CR file production in other police misconduct cases, including a recent decision in *Sierra v. Guevara, et al.*, 18 C 3029, Doc. [154]. Moreover, four years of CR files "should serve as a sufficient sample size for Plaintiffs to rely on to draw meaningful conclusions and any challenge to the sample size will likely affect only the weight, not admissibility, of Plaintiffs' expert's opinions regarding the training, supervision, and discipline of police misconduct." *Reyes*, 2019 WL 4278043, at *11. The costs associated with producing even these four years of CR files are not insignificant, and will increase substantially if the timeframe is enlarged. These costs include collecting the files, scanning and copying, reviewing the files for protected materials, such as sensitive medical information, and redactions. Thus, in assessing proportionality concerns, the Court finds that the CR files are important to the *Monell* training and supervision claim, and in light of the large dollar amount in controversy and

11

the Plaintiff's limited access to the material on training and supervision, production of these files is appropriate, but that a four-year period is sufficient for Plaintiff's purposes given the burden involved in the production.

For clarity, the Court is only ordering CR files from August 28, 1987 to August 28, 1991 for complaints made against Area Four detectives, and not career-wide CR files that would include files from outside this time-frame. The City states that, if ordered, this would result in the production of over 800 CR files, and the Court finds that proportionality concerns weigh against such an extensive production. Four years is sufficient for Plaintiff to establish any patterns in the complaints against Area Four detectives, and certainly CRs obtained by detectives after 1991 are not relevant to the *Monell* claim arising from alleged customs and practices that were in place before the 1991 Porter homicide.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion to compel *Monell* discovery [158] is granted in part and denied in part. The Court orders Defendant City of Chicago to produce homicide files and Complaint Register files for the four-year period August 28, 1987 to August 28, 1991. In light of the present health crisis, the time-frame for the production will be discussed at the next status hearing

**SO ORDERED.**

Dated: April 15, 2020

                                                Sunil R. Harjani
                                                United States Magistrate Judge