**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PATRICK PRINCE, | ) | |
| | ) | No. 18 C 2952 |
| *Plaintiff,* | ) | |
| | ) | Hon. John Z. Lee, |
| v. | ) | District Judge |
| | ) | |
| KRISTON KATO, *et al.,* | ) | Hon. Sunil R. Harjani, |
| | ) | Magistrate Judge |
| *Defendants.* | ) | |

**MOTION FOR ENTRY OF A PROTECTIVE ORDER**

Plaintiff PATRICK PRINCE, by his attorneys, pursuant to Federal Rule of Civil

Procedure 26(c)(1)(D), moves for entry of a protective order precluding Defendants from asking

Jeffrey Williams questions about an ongoing criminal investigation. In support, Plaintiff states as

follows:

**INTRODUCTION**

This Court previously granted Defendants' unopposed motion to depose Jeffrey

Williams, a witness they have disclosed in this case and who was a co-defendant of Plaintiff

when he was wrongfully convicted of the murder of Edward Porter in 1991. *See* Dkts. 291, 293.

In their motion, Defendants claimed they located Williams following his arrest in April of

2021. These criminal proceedings remain pending.

Nonetheless, when Plaintiff asked Defendants whether they would agree not to ask Mr.

Williams about his ongoing criminal proceedings, because they view him as a witness to events

from 30 years ago, Defendants refused. Indeed—and shockingly—Defendants intend to ask

Williams about privileged matters regarding an unrelated, current criminal charge that is irrelevant to this suit.[1]

For at least three reasons, this Court should grant a protective order to preclude Defendants from asking about Williams's unrelated, ongoing criminal proceedings. First, an inquiry into Williams's ongoing criminal proceedings treads into questions about privileged matters. Williams enjoys a constitutional right against self-incrimination under the Fifth Amendment to the United States Constitution. Privileged matters are beyond the scope of discovery. Second, there is no reason to permit Defendants to harass or threaten Williams or his constitutional rights by questioning Williams about issues over which they know he almost certainly will assert his Fifth Amendment rights.

Third, asking Williams questions about his ongoing criminal proceedings is so unrelated and so prejudicial that it should be excluded from discovery; the information would not even remotely be admissible under Federal Rules of Evidence 404(b) or 403. While admissibility is certainly not the sole metric for evaluating the scope of discovery under Rule 26, it must have its limits. Defendants have not—and cannot—proffer a non-propensity reason for asking Williams about these charges. As far as Plaintiff can tell, because the pending charges allegedly involve a gun in some way, Defendants want to gather this evidence to support an inference that Williams had a gun in 1991, some 30 years prior. This is absurd. Even if it were not, any probative value of that information is substantially outweighed by the danger of unfair prejudice to Williams as both a witness in Prince's civil suit and in his own pending criminal matter. A protective order should be entered.

---

[1] Pursuant to Local Rule 37.2, the parties met and conferred on this issue via phone and email but reached impasse on January 24, 2022. Dkt. 296.

## RELEVANT BACKGROUND

The dispute giving rise to this motion is whether Defendants can ask Williams questions about an unrelated, ongoing criminal proceeding. Jeffrey Williams was Plaintiff Patrick Prince's co-defendant during Plaintiff's wrongful prosecution and eventual wrongful conviction for the 1991 murder of Edward Porter. Williams was convicted on a theory of accountability after signing a statement also written Defendant Kato (incorrectly) claiming he gave Prince the gun used in the shooting. Plaintiff's conviction was vacated, the charges dismissed, and has since been awarded a certificate of innocence. Dkt. 1. Given that Williams was originally involved in the 1991 murder charge on a theory of accountability, there is a strong reason to believe that his conviction should also be set aside.[2]

Like Plaintiff, Williams maintains he did not have any role in the Porter shooting. Like Plaintiff, Williams also maintains he was coerced into signing a fabricated and false confession by Chicago Police Detectives, including Defendant Kato. But, apart from those broad strokes, Plaintiff's own constitutional claims do not hinge or turn on the testimony of Williams. Aside from Plaintiff's constitutional rights being personal (and not vicarious), Williams was not present or even at the station when Plaintiff was interrogated. That said, there is no dispute that Williams is part of the Detectives' (misguided) Porter homicide investigation. Plaintiff has no quarrel with a deposition about the issues related to that 1991 investigation.

Some 30 years later, in 2020, Williams was charged with entirely unrelated UUW/gun possession charges in April and May of 2021. Exs.1, 2 (Criminal Docket Sheets). Those criminal

---

[2] Mr. Williams has recently retained The Exoneration Project, which also represented Mr. Prince, in this endeavor.

3

cases are ongoing, no trial date is set, and Mr. Williams is now awaiting trial at Cook County Jail. *Id*. Williams has separate counsel in these cases.

Defendants' stated reason for questioning Williams about ongoing criminal proceedings is the "nature of the[] recent arrests" and his alleged role in the Porter homicide. Dkt. 291.

## ARGUMENT

### A. Legal Standard

Discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." FED. R. CIV. P. 26(b)(1). This court has discretion to issue protective orders for good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1); *see Webb v. CBS Broad., Inc.*, 08 C 6241, 2011 WL 111615 (N.D. Ill. Jan. 13, 2011) (providing that [a] party may move a court at any time during a deposition "to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."). This court may enter a protective order to "forbid[] inquir[ies] into certain matters, or limit[] the scope of disclosure or discovery to certain matters." FED. R. CIV. P. 26(c)(1)(D). While the burden of proof rests with the responding party to show why a particular request for discovery is improper, "when the discovery request is overly broad or relevancy is not apparent, the requesting party must establish relevancy." *Caracci v. Am. Honda Motor Co., Inc.*, No.19-CV-2796, 2021 WL 4459468 (N.D. Ill. 2021) (quoting *Hills v. AT&T Mobility Services, LLC*, No. 3:17-CV-556-JD-MGG, 2021 WL 3088629 (N.D. Ind. 2021)).

A party seeking a protective order need only show that good cause exists for a protective order. *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997). Good cause exists where, for example, compelled "disclosure will cause a clearly defined and serious injury." *Hobley v. Chicago Police Commander Burge*, 225 F.R.D. 221, 224 (N.D. Ill. 2004).

**B. Williams's Fifth Amendment Right to Silence Precludes Defendants from Asking Him About Ongoing Criminal Prosecution and Arrests.**

There is good cause to enter this protective order. Williams enjoys a Fifth Amendment privilege from being compelled "to answer official questions put to him in any…proceeding civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 389 (7th Cir.1995); *see also National Acceptance Co. of America v. Bathalter*, 705 F.2d 924 (7th Cir. 1983) (extending Fifth Amendment privilege to all aspects of the discovery stage). The Fifth Amendment privilege protects Williams from self-incrimination and "is a shield against the dangers of an inquisitorial system of jurisprudence." *In re Corrugated Container Antitrust Litig.*, 661 F.2d 1145 (7th Cir. 1981). The Fifth-Amendment privilege "must have a broad construction in favor of the right it was intended to secure." *Id.* at 1150 (quoting *Counselman v. Hitchcock*, 142 U.S. 547, 562 (1892)); *see also Maness v. Meyers*, 419 U.S. 449, 462 (1975) (explaining that the Supreme Court "has always broadly construed its protection to assure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action.")..

Any inquiry into Williams' current and ongoing criminal proceedings would infringe on his Fifth Amendment Rights. Any statements he makes about the circumstances around the arrests can and will likely be used against him in the prosecutions as they proceed. Further, it is not fair or just for a third-party witness to face this sort of jeopardy in view of their right to silence. *United States v. Tingle*, 1335, 1336 n.5 (9th Cir. 1981) (en banc) ("Refusal to cooperate is every defendant's right under the Fifth Amendment. Under our adversary system of criminal justice, a defendant may not be made to suffer for his silence."); *cf. Malloy v. Hogan*, 378 U.S. 1, 8 (1964) (explaining that the Fifth Amendment guarantees "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no

5

penalty . . . for such silence"). This point is especially pertinent in this case given that, ironically, the Chicago Police seek to depose Williams about information that would violate Williams' Fifth Amendment privilege after having been accused by Prince of disregarding *his* Fifth Amendment rights in the investigation.

Moreover, "any sanction which makes assertion of the Fifth Amendment privilege "costly" must be limited. *Spevack v. Klein*, 385 U.S. 511, 515 (1967). Here, Defendants expect—and even potentially *hope*—Williams will invoke his Fifth Amendment privilege. This invocation would be costly and could cause Williams serious injury, including an adverse inference in civil matters. *La Salle Lake View,*54 F.3d at 390; *see also Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502*, 2021 No. 15 CV 9323, WL 1209296 (N.D. Ill. 2021) ("Although 'constitutionally protected, a civil litigant's invocation of the privilege against self-incrimination during the discovery process if far from costless.") (quoting *United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F3d 78(2d Cir. 1995)).

Given these issues, a protective order is warranted.

## C. Asking Williams About an Ongoing Criminal Prosecution Will Only Serve To Embarrass and Harass Williams

Additionally, this Court should enter a protective order barring Defendants from asking him about ongoing, unrelated criminal proceedings because permitting such questioning only serve to: attempt to embarrass and harass Williams and unnecessarily complicate discovery by introducing testimony that has no bearing on the issues at hand. FED. R. CIV. P. 26(b)(c).

Under Rule 26(c)(1), the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Gonzalez v. Scaletta*, 17 C 7080, 2018 WL 6573227 (N.D. Ill. Dec. 12, 2018); *see also Cty. Materials Corp. v. Allan Block Corp.*, 502 F.3d 730, 739 (7th Cir. 2007) ("The unique character of the discovery

6

process requires that the trial court have substantial latitude to fashion protective orders."). The party moving for a protective order must establish, through a "particular and specific demonstration of fact," that good cause exists for the Court to enter a protective order. *Nieves v. OPA, Inc.*, 948 F. Supp. 2d 887 (N.D. Ill. 2013) (quoting *Felling v. Knight*, No. IP 01-0571-C-T/K, 2001 WL 1782360 (S.D. Ind. Dec. 21, 2001)).

To overcome this motion for protective order, Defendants must articulate specific reasons why deposing Williams could reasonably lead to the discovery of *admissible* evidence related to Prince's civil rights suit. FED. R. CIV. P. 26(b)(1); *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 2018 WL 4356594 (N.D. Ill. 2018) ("Unless the requestor can demonstrate that the materials sought are relevant, judges should not hesitate to exercise appropriate control over the discovery process. Phrased differently, 'fishing expeditions' in discovery are prohibited because the information being sought is ultimately not 'relevant.'") (quoting *BankDirect,* WL 946396 (N.D. Ill. 2018 at \*4.)).

> 1. *Failure to Grant a Protective Order Will Subject Williams to Embarrassment and Harassment by Forcing Him to Repeatedly Assert His Privileg*e.

Failing to limit discovery will surely lead to harassment of Williams as he will likely be forced to repeatedly assert his Fifth Amendment privilege which, in this civil proceeding, may give rise to adverse inference. *Baxter v. Palmigiano*, 425 U.S. 308 (1976).

Given that Williams is concurrently involved in pending unrelated criminal proceedings, the only purpose for asking Williams these questions is to harass, to try to "get under his skin," or to otherwise inflame his emotions during a deposition that will already involve weighty topics. This is no idle concern. Defense counsel have, in other cases and this one, aggressively questioned witnesses about other unrelated potential criminal acts in a manner that has changed

the entire tenor of the deposition and the testimony subsequently given. In those instances, while nonetheless harassing, none of the witnesses were being currently criminally prosecuted. Given the Fifth Amendment rights, the absence of any relevance, and the high likelihood of harassment or unease to Mr. Williams, a protective order is warranted.

2. *A Protective Order Is Necessary to Avoid Further Discovery Complications.*

At the recent status conference in this case, the Court emphasized that it was going to oversee discovery and ensure things remain "on track." The current motion seeks to ensure those ends. In particular, should defense counsel be permitted to ask Williams about his ongoing criminal proceedings, Williams' additional counsel for these proceedings may need to be present, an unnecessary waste of time (and money) given the testimony is irrelevant. Then, at the deposition itself, there are likely to be additional complications stemming from this questioning, resulting in potential calls to this Court or other disputes down-the-road if Mr. Williams refuses to answer questions after being asked about his ongoing criminal proceedings. Moreover, Plaintiff will likely be required to file a motion *in limine* to exclude this evidence at trial, even though it is obviously irrelevant. The court has the opportunity now to cut this off at the pass and prevent further time and resources being spent on such a tangential issue.

**D. Even assuming the evidence is not privileged, and questions would not be harassing, embarrassing, or costly, the questioning still should not be permitted due to the inadmissibility of the information as a forbidden propensity inference.**

There is no purpose—much less relevance—for the defendants to ask Williams about an unrelated criminal charge that occurred thirty years after the incident at issue here. Any testimony from Williams about his current pending charge would be inadmissible as an improper propensity inference under Federal Rules of Evidence 404(b). Rule 404(b) prohibits the admission of other crimes, wrongs, or acts for the purpose of proving a person's character or

8

propensity to act in a certain manner. *See* FRE 404(b) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). To be admissible, other-act evidence must be "supported by some propensity-free chain of reasoning." *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014). Even then, courts must also "assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice" under Rule 403. *Gomez*, 763 F.3d at 860. Evidence is considered unfairly prejudicial if it will "induce a jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *Estate of Moreland v. Dieter*, 395 F.3d 747, 754 (7th Cir. 2005) (quoting *United States v. Vretta*, 790 F.2d 651, 655 (7th Cir. 1986)).

Plaintiff recognizes that the standard for *discovery* is not admissibility. But, in the present context—seeking a protective order—the patent inadmissibility of this evidence coupled with the issues of privilege and harassment collectively illustrate that the motion should be granted. Put differently, because the information is privileged and would be harassing, *and* because Defendants cannot provide a propensity-free chain of reasoning for why asking Williams about a 2021 charge for unlawful use of a weapon has any relation to the 1991 murder, a protective order is warranted. *See* Dkt. 291-3. The mere fact that Williams was *alleged* of having a gun in 2021 bears no relation, relevance, or connection to whichever gun was used by whichever individual to kill Edward Porter in 1991. If this evidence were presented to the jury in this case, the danger of the jury drawing a forbidden propensity inference greatly outweighs any non-propensity purpose the defendants could try to provide to the court. Furthermore, even if Defendants could attempt to provide a non-propensity purpose, it is unlikely it will be the conclusion of a propensity-free chain of reasoning. Given the great time discrepancy of thirty years between the

9

two incidents, there is no logical connection that can be drawn without relying on propensity.

There is no admissible use for any questions related to Williams' pending criminal charge.

Therefore, such information is irrelevant to Prince's civil rights case, making a protective order

necessary here. *See Jennings v. Peters*, 162 F.R.D. 120, 123 (N.D. Ill. 1995) (granting a

protective order where the defendants intended to use the plaintiff's deposition for a purpose

other than trial preparation—namely, embarrassment).

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's motion and enter an order

precluding Defendants from asking Williams about his ongoing criminal proceedings in this

case.

RESPECTFULLY SUBMITTED,

**PATRICK PRINCE**

By:   /s/ David B. Owens_____

*One of Plaintiff's Attorneys*

Jon Loevy
Steve Art
David B. Owens
Quinn Rallins
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

I, David B. Owens, an attorney, hereby certify that on February 22, 2022, I caused the

foregoing PLAINTIFF'S MOTION FOR ENTRY OF A PROTECTIVE ORDER be filed using

the Court's CM/ECF system, which effected service on all counsel of record.

/s/ David B. Owens_____

*One of Plaintiff's Attorneys*